UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ARMANDO GUZMAN AND JOSE GARCIA,
individually and on behalf of all persons similarly                07-CV-1126 (JG)(RER)
situated who were employed by VLM, INC. d/b/a
RELIABLE BAKERY,

                                        Plaintiffs,

                    -against-

VLM, INC.  d/b/a RELIABLE BAKERY, and
JOSEPH VITACCO,

                                        Defendants.
-----------------------------------------------------------------X

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND COLLECTIVE ACTION STATUS AND IN SUPPORT OF ITS CROSS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION CLAIMS

MILMAN LABUDA LAW GROUP PLLC

Joseph M. Labuda
Attorneys for Defendant
VLM, Inc. d/b/a Reliable Bakery
3000 Marcus Avenue, Suite 3W3
Lake Success, NY  11042
(516) 328-8899

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT.............................................................................................................2
POINT I:   THIS COURT SHOULD NOT CERTIFY THIS MATTER AS A
COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) ...................................2

POINT II:   THIS COURT SHOULD DISMISS PLAINTIFFS' CLASS
ALLEGATIONS WITH PREJUDICE BECAUSE THEY CANNOT SHOW ANY
SET OF FACTS UNDER WHICH THIS COURT COULD CERTIFY A *RULE
23* CLASS ACTION..................................................................................................4

   A.   Plaintiffs Cannot Meet The Prerequisites Of Rule 23(a) Because They
Cannot Show That Joinder Is Impracticable .............................................................5

   B.   Plaintiffs Cannot Meet The Prerequisites Of Rule 23(a) Because They
Cannot Show That Their Claims Would Be Typical Of The Claims Of The
Putative Class ........................................................................................................11

   C.   Plaintiffs Cannot Meet The Prerequisites Of Rule 23(a) Because They
Cannot Show That They Are Adequate Representatives  Of The Putative Class 14

   D.   Plaintiffs Also Cannot Show That This Action Meets The Superiority Test
Of Rule 23(b)(3)....................................................................................................15

POINT III:   PLAINTIFF CANNOT MAINTAIN A CLASS ACTION UNDER
NEW YORK LABOR LAWS..................................................................................24

POINT IV:   THIS COURT SHOULD DISMISS PLAINTIFFS' CLASS
ALLEGATIONS WITH PREJUDICE FOR THE ADDITIONAL REASON
THAT THEY IRRECONCILABLY CONFLICT WITH FEDERAL LAW...........26

CONCLUSION.......................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

Alix v. Wal-Mart Stores, Inc., 838 N.Y.S.2d 885 (Sup. Co. Albany Co. 2007)................5, 6, 7

Amchem Prod. Inc. v. Windsor, 521 U.S. 591 (1997)................................................14

Andrews v. Bechtel Power Corp., 780 F.2d 124 (1st Cir. 1985).............................10

Arrington v. National Broad. Co., Inc., 531 F. Supp. 498 (D.D.C. 1982)................27

Batas v Prudential Health Ins. Co. of America, 831 N.Y.S.2d 371 (1st Dept. 2007)................5

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988) ......................................17

Carter v. Dutchess Community College, 735 F.2d 8 (2nd Cir. 1984).......................12

Center v. Frito-Lay, Inc., 74 A.D.2d 550, 425 N.Y.S 2d 115, aff'd, 52 N.Y. 2d 994, 438
N.Y. S. 2d 80, 419 N.E. 2d 1079 (1981)........................................................25

Chao v. A-One Med. Servs., Inc., 346 F.3d 908 (9th Cir. 2003)..............................29

Chase v. AIMCO Properties, L.P., 374 F. Supp. 2d 196 (D.D.C. 2005)....................22

Consol. Rail Corp. v. Tow of Hyde Park, 47 F.3d 473 (2d Cir. 1995)........................9

Crain v. Helmerich & Payne Int'l Drilling Co., 1992 U.S. Dist. LEXIS 5367 (E.D.
La.1992)....................................................................................................17

De Asencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003).............................23

De La Fuente v. FPM Ipsen Heat Treating, 2002 U.S. Dist. LEXIS 24040 (N.D.Il.
2002) ............................................................................................21, 22

Dunlop v. The City of New York, 2006 U.S. Dist. LEXIS 72315 (S.D.N.Y. 2006)..............18

Eisen v. Carlisle & Iacquelin, 417 U.S. 156 (1974)...........................................28

El v. Potter, 10 Wage & Hour Cas. 2d (BNA) 721 (S.D.N.Y. 2004) ..........................7

Fontana v. Elrod, 826 F.2d 729 (7th Cir. 1987)................................................28

Foster v. Food Emporium, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. 2000) ............24, 25

Gen. Tel. Co. v. Falcon, 457 U.S. 147 (1982) .................................................16

Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101 (S.D.N.Y. 2003)..........7,27

Gonzalez v. City of New York, 396 F. Supp. 2d 411 (S.D.N.Y. 2005) ...................29, 30

H&R Block, Ltd. v. Hoursden, 186 F.R.D. 399 (E.D. Tex. 1999) ...........................19

Hall v. Burger King Corp., 1992 - 2 Trade Cas. (CCH) ¶ 70,042 (S.D. Fla. 1992) ..........14, 15

Hasken v. City of Louisville, 213 F.R.D. 280 (W.D. Ky. 2003).............................22

Hauptman v. Helena Rubinstein, Inc., 452 N.Y.S.2d 989 (Sup. Co. N.Y. Co.1981)... ......24,25

Herman v. RSR Security Services Ltd., 172 F.3d 132 (2nd Cir. 1999).....................12

Herring v. Hewitt Associates, Inc., 2006 U.S. Dist. LEXIS 56189 (D.N.J. 2006)................30

Himmelman v. Continental Casualty Company, 2006 U.S. Dist. LEXIS 56187
(D.N.J.2006)..........................................................................................30

Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442 (2nd Cir. 1998) .........19

Jackson v. City of San Antonio, 220 F.R.D. 55 (W.D.T.X. 2003) .......................18, 19

Jacobs v. New York Foundling Hospital, 483 F. Supp.2d 25 (E.D.N.Y. 2007)........................3

King v. Carey, 405 F. Supp. 41 (W.D.N.Y. 1975) ...............................................9

Legrand v. Educ. Mgmt. Corp., 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. 2004)............24, 25

Leider v. Ralfe, 387 F. Supp. 2d 283 (S.D.N.Y. 2005) .........................................24

Leuthold v. Destination America, Inc., 224 F.R.D. 462 (N.D. Cal. 2004)............................8, 9

McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574 (N.D. Ill. 2004) .........................................23

Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10  (D.P.R. 2005) ..........................19

Mete v. New York State Office of Mental Retardation & Dev. Disabilities, 1993 U.S.
Dist. Lexis 8625 (N.D.N.Y. 1993)..................................................................................................22

Moeck v. Gray Supply Corp., 2006 U.S. Dist. LEXIS 511 (D.N.J. 2006)...............................23

Muecke v. A -Reliable Auto Parts & Wreckers, Inc., 2002 U. S. Dist. LEXIS 11917
(N.D. Ill. 2002)..................................................................................................................................17

N.L.R.B. v. St. Louis Comprehensive Neighborhood Health Center, Inc., 633 F.2d 1268
(8th Cir. 1980)...................................................................................................................................15

Neary v. Metro Property & Casualty Ins. Co., 472 F. Supp 2d 247 (D. Conn. 2007).............11

Pickett v. DeKalb County, 349 F.3d 1294 (11th Cir. 2003) .......................................................30

Piper v. Portnoff, 216 F.R.P. 325 (E.D. Pa. 2003).........................................................................5

Reyes v. Walt Disney World Co., 176 F.R.D. 654 (M.D. Fl. 1998)...........................................11

Rivas-Montano v. United States of America, 2006 U.S. Dist. LEXIS 31893 (M.D.Fl.
2006); ..................................................................................................................................................13

Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993) ..........................................................................9

Roby v. Saint Louis Southwestern Ry. Co., 775 F.2d 959 (8th Cir. 1985) ...............................11

Rodriguez v. The Texan, Inc., 2001 U.S. Dist. LEXIS 24652 (N.D. Ill. 2001) ...............23, 24

Rowe v. Morgan Stanley, Dean Witter, 1999 U.S. Dist. LEXIS 21746 (D.N.J. 1999)...........10

Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998) ....................................................15

Severtson v. Phillips Beverage Co., 137 F.R.D. 264 (D. Minn. 1991)......................................19

Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990)....................................3, 4

Small v. Lorillard Tobacco Co., 252 A.D.2d 1 (1st Dept. 1998).................................................29

Thiebes v. Wal-Mart Stores, Inc., 1999 U.S. Dist. LEXIS 18649 (D. Or. 1999)......................8

Thiessen v. General Electric Capital Corporation, 267 F.3d 1095 (10th Cir. 2001) ..................3

Torres v. Gristede's Operating Corp., 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. 2006)...........3

Tran v. Le French Baker, Inc., 1995 U.S. Dist. LEXIS 8371 (N.D. Cal. 1995).......................29

Trapaga v. Central States Joint Board Local 10, 2007 U.S. Dist. LEXIS 23438 (N.D.Il.
2007). ..................................................................................................................................................13

United State of America v. Napoles, 2007 U.S. Dist. LEXIS 54159 (S.D.Tx. 2007).............13

United States ex rel. Walker v. Mancusi, 338 F. Supp. 311 (W.D.N.Y. 1971).........................9

United States v. Gibbs, 383 U.S. 715 (1966),...............................................................................17

Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10  (D.P.R. 2005) .........................19

Mete v. New York State Office of Mental Retardation & Dev. Disabilities, 1993 U.S.
Dist. Lexis 8625 (N.D.N.Y. 1993)..................................................................................22

Moeck v. Gray Supply Corp., 2006 U.S. Dist. LEXIS 511 (D.N.J. 2006)..........................23

Muecke v. A -Reliable Auto Parts & Wreckers, Inc., 2002 U. S. Dist. LEXIS 11917
(N.D. Ill. 2002).....................................................................................................................17

N.L.R.B. v. St. Louis Comprehensive Neighborhood Health Center, Inc., 633 F.2d 1268
(8th Cir. 1980)......................................................................................................................15

Neary v. Metro Property & Casualty Ins. Co., 472 F. Supp 2d 247 (D. Conn. 2007)...........11

Pickett v. DeKalb County, 349 F.3d 1294 (11th Cir. 2003) ....................................................30

Piper v. Portnoff, 216 F.R.P. 325 (E.D. Pa. 2003)....................................................................5

Reyes v. Walt Disney World Co., 176 F.R.D. 654 (M.D. Fl. 1998)........................................11

Rivas-Montano v. United States of America, 2006 U.S. Dist. LEXIS 31893 (M.D.Fl.
2006); .....................................................................................................................................13

Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993) .....................................................................9

Roby v. Saint Louis Southwestern Ry. Co., 775 F.2d 959 (8th Cir. 1985) .............................11

Rodriguez v. The Texan, Inc., 2001 U.S. Dist. LEXIS 24652 (N.D. Ill. 2001) ......................24

Rowe v. Morgan Stanley, Dean Witter, 1999 U.S. Dist. LEXIS 21746 (D.N.J. 1999)...........10

Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998) ..................................................15

Severtson v. Phillips Beverage Co., 137 F.R.D. 264 (D. Minn. 1991).....................................19

Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990).........................................4

Small v. Lorillard Tobacco Co., 252 A.D.2d 1 (1st Dept. 1998)..............................................29

Thiebes v. Wal-Mart Stores, Inc., 1999 U.S. Dist. LEXIS 18649 (D. Or. 1999) ......................8

Thiessen v. General Electric Capital Corporation, 267 F.3d 1095 (10th Cir. 2001) ..................3

Torres v. Gristede's Operating Corp., 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. 2006)...........3

Tran v. Le French Baker, Inc., 1995 U.S. Dist. LEXIS 8371 (N.D. Cal. 1995).......................29

Trapaga v. Central States Joint Board Local 10, 2007 U.S. Dist. LEXIS 23438 (N.D.Il.
2007). .....................................................................................................................................13

United State of America v. Napoles, 2007 U.S. Dist. LEXIS 54159 (S.D.Tx. 2007).............13

United States ex rel. Walker v. Mancusi, 338 F. Supp. 311 (W.D.N.Y. 1971)..........................9

United States v. Gibbs, 383 U.S. 715 (1966),..........................................................................17

## PRELIMINARY STATEMENT

Defendant VLM, Inc. d/b/a Reliable Bakery ("Reliable Bakery" or "Defendant")[1] opposes Plaintiffs' motion for class certification and collective action status[2] and cross-moves to dismiss on the grounds that: (1) Plaintiffs should not be granted certification for a 29 U.S.C. § 216(b) collective action because this would be premature and Plaintiffs have not otherwise conclusively proven that they are "similarly situated"; (2) Plaintiffs have failed to meet the standards for certification of a Rule 23 class action; (3) No class certification is permissible for Plaintiffs' New York State law claim; and (4) Plaintiffs' Rule 23 class allegations irreconcilably conflict with federal law.

First, Plaintiffs cannot seek certification for a 29 U.S.C. § 216(b) collective action because the Court has not detailed which of the three (3) potential standards used by courts to determine whether plaintiffs are "similarly situated". Furthermore, even if the Court applies the two-tiered standard that Plaintiffs suggest, certification can only be granted after discovery is complete. Therefore, for the Court to certify a collective action at this point in the litigation would be premature.

Second, as will be demonstrated below, Plaintiffs failed to provide an adequate factual basis to warrant class certification under Rule 23. Plaintiffs have failed to meet the numerosity, typicality and adequacy of representation requirements in order to have the class certified.

---

[1] Defendant Joseph Vitacco joins in opposing Plaintiffs' motion for class certification.
[2] Defendant notes that while the Court has approved notice to potential class members of a collective action, a collective action has not yet been certified by the Court pursuant to 29 U.S.C. § 216(b). Defendant continues to maintain that no collective action should be certified in this matter.

Third, as other courts have done, this Court should refuse to certify class actions brought under N.Y. Lab. Law §§198(1) and/or 663(2) pursuant to C.P.L.R. 901(b), which prohibits any class action from seeking to recover a penalty such as liquidated damages.

Fourth, in amending the Fair Labor Standards Act ("FLSA"), Congress adopted the opt-in model of collective actions with the intention of eliminating opt-out class actions. Enforcement of state law overtime claims through a Rule 23 opt-out class would interfere with the objectives of the FLSA and the methods selected by Congress to adjudicate those claims. Plaintiffs' proposed dual certification theory therefore creates an irreconcilable conflict with the parties' substantive rights under the FLSA.

Based on the foregoing reasons, Plaintiffs' motion for class certification must be denied.

## ARGUMENT

## POINT I:   THIS COURT SHOULD NOT CERTIFY THIS MATTER AS   A COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)

Plaintiffs, in their memorandum of law, request that the Court certify their claims as a class action pursuant to 29 U.S.C. § 216(b). However, such certification is premature and otherwise inappropriate.

Plaintiffs argue that the courts, follow a two-tiered approach in deciding whether to certify an action pursuant to 29 U.S.C. § 216(b), that Plaintiffs satisfied the first stage, the "notice stage"; and that the Court should now certify this matter as a collective action. However, "Federal district courts have adopted or discussed at least three approaches to determining whether plaintiffs are 'similarly situated' for purposes of § 216(b)."

Thiessen v. General Electric Capital Corporation, 267 F.3d 1095, 1102 (10th Cir. 2001). Furthermore, "[t]he Second Circuit has not yet determined which standard applies in considering whether class member are 'similarly situated'." Torres v. Gristede's Operating Corp., 2006 U.S. Dist. LEXIS 74039 at *29 (S.D.N.Y. September 29, 2006); see also Jacobs v. New York Foundling Hospital, 483 F. Supp.2d 25 (E.D.N.Y. 2007).

In this matter, Plaintiffs suggests that the Court apply the first approach to determine whether plaintiffs are "similarly situated" for purposes of collective action. This "ad hoc" approach, involves a two-tiered analysis: in the first stage, a court first makes an initial notice stage determination whether plaintiffs are "similarly situated"; in the second stage, after the completion of discovery, a court then makes a second determination, utilizing a stricter standard of "similarly situated" and looking at factors such as (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defneses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. See Thiessen, 267 F.3d at 1102, 1003. (emphasis added).

However, discovery has in no way been completed in this matter; as such, Plaintiffs' request for the Court to certify this matter as a collective action under the "ad hoc" approach is premature and should be denied by the Court.

Furthermore, Defendant urges the Court to reject the "ad hoc" approach and adopt another approch that consideres Rule 23(a)'s four prerequisites (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3)'s requirement that common questions of fact predominate should be used to determine whether plaintiffs are similarly situated. See, eg., Shushan v. University of Colorado,

132 F.R.D. 263 (D. Colo. 1990). Accordingly, Defendant repectfully refers the Court to its arguments against class certification pursuant to Rule 23 in Point II of this Memorandum of Law as a basis against a finding that Plaintiffs are "similarly situated" for purposes of § 216(b).

## POINT II: THIS COURT SHOULD DISMISS PLAINTIFFS' CLASS ALLEGATIONS WITH PREJUDICE BECAUSE THEY CANNOT SHOW ANY SET OF FACTS UNDER WHICH THIS COURT COULD CERTIFY A RULE 23 CLASS ACTION

Plaintiffs cannot assert any set of facts under which this Court should certify the overtime claims for a class action under Fed. R. Civ. P. 23 because: (1) the joinder of all members is not impracticable so as to satisfy numerosity as required by Rule 23(a)(1); (2) their claims would not be typical of the claims of the putative class; (3) a class action is not superior to other available methods for the fair and efficient adjudication of the controversy as required by Rule 23(b)(3); and (4) the representatives of the putative class are not adequate.

As will be demonstrated below, the class consists of a very small number of employees, the claims of potential members are too individualized to be maintained as a class action, and a class action is not a superior method of adjudicating claims, since the FLSA's opt-in provision of 29 U.S.C. § 216(b) provides an easy and efficient vehicle through which interested employees may join this suit and assert their claims. A Rule 23 opt-out class action on claims for the same relief conflicts with the congressionally-mandated opt-in mechanism and would inevitably lead to confusion and case-management difficulties. Lastly, Plaintiffs lack the moral turpitude and standing to be adequate class members.

4

## A. Plaintiffs Cannot Meet The Prerequisites Of Rule 23(a) Because They Cannot Show That Joinder Is Impracticable

Plaintiffs cannot meet the first requirement of Rule 23(a) - that "the class is so numerous that joinder of all members is impracticable" -

> Rule 23(a)(1) is not a numerosity requirement in isolation. The words of this test, "the class is so numerous," are immediately followed by the limiting phrase, "that joinder of all members is impracticable." ... In reality then, Rule 23(a)(1) is an impracticability of joinder requirement, of which class size is an inherent consideration within the rationale of joinder concepts. The practicability of joinder must be evaluated in light of the circumstances of the particular litigation.

1 A. Conte & H. Newberg, Newberg on Class Actions § 3.03 (4th ed. 2002).

Let us first examine the actual size of the putative class. It is settled law in New York that the numerosity requirement can only be met by a proposed class of individuals who have been *aggrieved* by the conduct forming the basis of the complaint. See Piper v. Portnoff, 216 F.R.P. 325, 329 (E.D. Pa. 2003) (class consist of members who "suffered actual damages"). Batas v Prudential Health Ins. Co. of America, 831 N.Y.S.2d 371 (1st Dept. 2007). The central issue "is whether the class consists of members who can, in good faith, assert a claim that they were injured by defendants' alleged misconduct." Alix v. Wal-Mart Stores, Inc., 838 N.Y.S.2d 885, 891 (Sup. Co. Albany Co. 2007). Simply stated, individuals not aggrieved cannot be apart of the class and therefore cannot be used to satisfy the numerosity requirement. Batas, supra, 831 N.Y.S.2d at 374.

In Alix, the plaintiffs sought a class certification for class defined as hourly workers at the 92 Wal-Mart and Sam's Club stores located in New York State. The court found that based on the record there were individuals in the putative class that were paid accurately and were therefore not "aggrieved". Since they were not aggrieved they could

not be a part of the class and thus it was wrong for the plaintiffs to include the non-aggrieved hourly employees in their attempt to establish numerosity. Alix, supra, at 891. Having rejected the plaintiffs' contention that non-aggrieved individuals are sufficient for establishing numerosity the court averred that the defect is not fatal. Id. at 891. The court stated that a narrowed class could be certified so long as the class membership would "be ascertainable on the basis of objective criteria that do not require the Court to examine the individual merits of claims." Id. But, the court recognized that narrowing the class is not a panacea. It is axiomatic that "[w]here a case-by-case analysis is necessary to determine whether any given individual satisfies the requirements for class membership or where the size of a putative class is incapable of ascertainment absent such an analysis, certification of a class action is not warranted." Id. The court ultimately denied class certification because the class definition could not be "narrowed to include only aggrieved individuals without concomitantly necessitating a fact-specific individualized analysis of the circumstances surrounding each potential class member's employment with defendant." Id. citing Gawez v. Inter-Connection Elec., Inc., 806 N.Y.S.2d 444 (N.Y. Misc. 2005) affirmed by, in part, 845 N.Y.S.2d 367 (N.Y. App. Div. 2007).

In the instant matter, the class sought to be certified is defined as:

> The plaintiffs and all current and former employees of VLM, Inc. d/b/a Reliable Bakery who worked as bakers, food handlers, storage handlers, landing dock employees and in other job functions related to defendant's bakery operation from March 16, 2001 through the present. Corporate officers, shareholders, directors and administrative employees shall not be part of the proposed class.

This designation is insufficiently broad because it will include people who were not "aggrieved" and thus not in accord with the Alix court, i.e. that the "class consists of members who can, in good faith, assert a claim that they were injured by defendants'

alleged misconduct." <u>Alix</u>, 838 N.Y.S.2d at 891. If there is any doubt that the proposed class is overly broad, it must be noted that the proposed class would include ten (10) employees who have already indicated that they do not believe that they are owed any back pay from Defendant.[3]  Therefore, these ten (10) employees who are not aggrieved would still be included in Plantiffs' proposed class and thus not in accord with the <u>Batas</u> or <u>Alix</u> courts.  Since the class is overly broad, the court should be required to examine whether a narrowed class would suffice.

It must also be noted that in accordance with the Court's October 11, 2007 order, notice went out to 133 potential class members in October 2007.  However, to date, only <u>two</u> people have sent in the "Consent to Joinder" form- *Armando Guzman*, one of the named Plaintiffs in this matter, and Nawazish Ali Khan.[4]  Therefore, based on the lack of interest in the FLSA lawsuit, the size of any class of interested employees will likely be so small that joinder would not be impracticable.  Conversely, if the Court permitted a class action of all allegedly aggrieved employees, it may be quite difficult to process the case due to a lack of interest on the part of the employees as demonstrated by the lack of opt-ins to the FLSA case.

Lastly, courts look at factors other than mere size to determine whether joinder is impracticable under Rule 23(a)(1) are: (i) judicial economy arising from avoidance of a

---

[3] <u>See</u> Affidavits of Marcelino Carrasco, Margarito Cruz, Jesus Martinez, Ernesto Lopez, Julio Martinez, Nicholas Hernandez, Vito Vitale, Jameer Baksh, Tasadaq Husain and Andrea Plastina.

[4] Significantly, Jose Garcia, one of the named Plaintiffs in this action, has <u>not</u> sent in the "Consent to Joinder" form for this action.  A potential member of an FLSA collective action suit must expressly opt into the suit by "giv[ing] his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).  Therefore, "all plaintiffs, <u>including named plaintiffs</u>, must file written consents in order to begin their lawsuits, and the courts have made clear that a suit does not begin until a consent has been filed." (emphasis added) <u>El v. Potter</u>, 10 Wage & Hour Cas. 2d (BNA) 721, 730 (S.D.N.Y. 2004).  See <u>Gjurovich v. Emmanuel's Marketplace, Inc.</u>, 282 F. Supp.2d 101, 104 (S.D.N.Y. 2003) ("only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled").  Therefore, Jose Garcia is still not a part of this action.

multiplicity of actions; (ii) geographic dispersement of class members; (iii) size of individual claims; (iv) financial resources of class members; (v) the ability of claimants to institute individual suits; and (vi) requests for prospective injunctive relief involving future class members. See Newberg on Class Actions, 4th Ed. at § 3.06. As a matter of law, Plaintiffs cannot show that joinder is impracticable under these factors.

### 1. No Judicial Economy Will Be Gained Through Class Certification

Plaintiffs have also not satisifed the numerosity requirement because of the availability of the FLSA opt-in procedures. Because this Court has already approved the sending of notice to potential class members of a collective action pursuant to 29 U.S.C. § 216(b), the FLSA opt-in procedures under 29 U.S.C. § 216(b) allow any putative class member to join this case with ease[5]. Putative class members have already received notice of the pending action and have been provided with an opportunity to join the lawsuit by merely completing and signing a form, placing a stamp and address on an envelope, and mailing the form to Plaintiffs' counsel as instructed. Accordingly, putative class members can join this suit without any of the ordinary burdens of litigation, such as filing their own lawsuit, filing a motion for joinder or intervention, seeking out and paying for their own counsel, or initiating discovery. For the price of a regular mail stamp, a putative class member can opt-in to the FLSA collective action and obtain the same relief that he or she otherwise could obtain under the New York Labor Law. Thus, there is simply no judicial economy to be gained through class certification. See Leuthold v. Destination America, Inc., 224 F.R.D. 462, 469 (N.D. Cal. 2004) ("the FLSA suit provides a means

---

[5] The standard for FLSA collective action treatment is much more lenient than the standard for Rule 23 certification. See Thiebes v. Wal-Mart Stores, Inc., 1999 U.S. Dist. LEXIS 18649, at *6 (D. Or. Dec. 1, 1999) ("the 'similarly situated' standard under Section 216(b) is less stringent than the requirement under Fed. R. Civ. P. 23(b)(3) that common questions of law or fact predominate over questions affecting only individual members").

of participation for individuals who truly wish to join the suit, while requiring no action from those who do not wish to join"); 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][f] (3d ed. 1997) ("joinder is more likely to be found to be practicable if the identity and addresses of the class members are readily ascertainable"). In this case, the employee names and addresses are already known and, in fact, already have been contacted about the FLSA collective action.

### 2. Joinder Is Practicable Because The Proposed Class Members Are Fewer Than Forty (40) Individuals And Are From One, Discrete Geographic Area

"A class comprised of more than forty members generally satisfies numerosity." Consol. Rail Corp. v. Tow of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). While courts in some cases have held that a class with fewer than forty members satisfied numerosity, in each case the number of the class approached forty members. See King v. Carey, 405 F. Supp. 41, 44 (W.D.N.Y. 1975) (38 members); United States ex rel. Walker v. Mancusi, 338 F. Supp. 311, 316 (W.D.N.Y. 1971), gaff's on other grounds, 467 F.2d 51 (2d Cir. 1972) (also 38 members); Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (noting that "[a] leading treatise concludes, based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." (citing 1 Newberg § 3.05, at 141-42)).

In this matter, as stated above, while Plaintiffs claim that the potential class consists of up to 250 members, and collective action notices went out to 133 potential class members, to date, only 2 people have sent in the "Consent to Joinder" form- *Armando Guzman*, one of the named Plaintiffs in this matter, and Nawazish Ali Khan. These two individuals, along with Jose Garcia, the other named Plaintiff, brings the total

of employees that comprise Plaintiffs' putative class designation to 3, far below 40, the minimum threshold of numerosity. Thus, Plaintiffs have failed in this component of the numerosity requirement for class certification.

The discrete geographic location of putative class members also counsels against certification. "Joinder is considered more practical when all members of the class are from the same geographic area. In addition, where class members can be easily identified, joinder is more likely to be practicable." Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985) (citations omitted); see also Rowe v. Morgan Stanley, Dean Witter, 1999 U.S. Dist. LEXIS 21746, at **57-61 (same) (D.N.J. 1999); 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[d] (3d ed. 1997) ("a class that otherwise might satisfy the numerosity requirement may not be certified if the putative class members are not widely scattered and, therefore, easily joined").

In this matter, all potential members of a class asserting claims under New York law worked for Reliable Bakery in one state. Further, as can be seen from the list produced by Defendant (as per the Court's order dated October 26, 2007) of the names and addresses of one hundred thirty-three (133) Reliable Bakery employees, the vast majority of these employees live in the same borough- Brooklyn (See Affidavit of Joseph Vitacco, Exhibit "B"). Finally, the opt-in mechanism of the FLSA makes it easy for a potential class member to assert overtime claims no matter where he or she resides.

**3.     The Remaining Factors Further Suggest That Joinder Is Practicable**

The existence of the FLSA opt-in mechanism eliminates any remaining questions about the practicability of joinder. First, as explained above, putative class members will not face any economic barriers or logistical hurdles to joining this suit. Therefore, the size

10

of the individual claims and the financial resources of the potential class members are irrelevant. The ability of claimants to institute their own suits also demonstrates that Plaintiffs cannot show that joinder is impracticable. This is because any claimant is able to join this suit by opting in to the FLSA action through the mailing of an opt-in form. A § 216(b) opt-in collective action is the most practicable joinder imaginable.

Accordingly, Plaintiffs can show no set of facts under which joinder is impracticable, and thus they are unable to meet one of the essential prerequisites to class certification.

> **B.      Plaintiffs Cannot Meet The Prerequisites Of Rule 23(a)
>            Because They Cannot Show That Their Claims Would Be
>            Typical Of The Claims Of The Putative Class**

Typicality exists when the plaintiff will necessarily prove the bulk of each class member's claim by proving his or her own claim. Typicality will not be found where the claims are fact-specific or highly individualized. A court in this circuit recently denied class and collective action certification to a wage and hours complaint on the ground the claims were too individualized and that a class action and a claim under the FLSA were fundamentally irreconcilable. See Neary v. Metro Property & Casualty Ins. Co., 472 F. Supp 2d 247 (D. Conn. 2007); see also Roby v. Saint Louis Southwestern Ry. Co., 775 F.2d 959 (8th Cir. 1985) (Claims of plaintiff's discharge for rules violation not typical of claims of class members discharged for other reasons.); Reyes v. Walt Disney World Co., 176 F.R.D. 654 (M.D. Fl. 1998) (No typicality where the claim of each plaintiff and the punitive class members subject to unique circumstances.).

In the present case, Plaintiffs have not established that their claims are typical of the claims of the putative class. First, Plaintiffs, in their affidavits, each assert that they

and other employees were paid a daily rate. See Affidavits of Armando Guzman, Jose Garcia. However, ten (10) other employees have attested that they have been paid an hourly rate and overtime pay when they have worked over forty (40) hours in a week.[6]

Second, each claim for both Plaintiffs and the putative class would be too individualized, because each employee would have to prove that not only is Reliable Bakery liable on their claims, but that defendant Joseph Vitacco ("Vitacco") is liable for their claims as well. In order to be held liable under the FLSA, a person must be an "employer", which is defined by the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); See Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2nd Cir. 1999). Because the statute defines an employer in such broad terms, courts have employed the "economic reality" test to determine whether a person is an employer, the relevant factors including whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. Herman, 172 F.3d at 139, citing Carter v. Dutchess Community College, 735 F.2d 8, 12 (2nd Cir. 1984).

To date, Plaintiffs have never offered any proof that Vitacco possessed any of the powers that would recognize him as an employer for purposes of the FLSA under the "economic reality" test. Even if Plaintiff Guzman could prove that Mr. Vitacco was his employer, this does not mean that Vitacco was the employer for Plaintiff Garcia or anyone else from the putative class, and vice versa. Furthermore, Reliable Bakery had

---

[6] See Affidavits of Marcelino Carrasco, Margarito Cruz, Jesus Martinez, Ernesto Lopez, Julio Martinez, Nicholas Hernandez, Vito Vitale, Jameer Baksh, Tasadaq Husain and Andrea Plastina.

several different departments: (1) baking; (2) packing; (3) oven; and (4) maintenance. See Affidavit of Joseph Vitacco. Clearly, numerous questions exist concerning any liability by Vitacco for each individual class member. Since these factual issues required an individualized analysis, this counsels against certifying any class action.

Plaintiffs present the affidavits of four (4) former employees in support of the instant motion.[7] The claims in the affidavits are too generalized and conclusory for the Court to afford any weight to them. All of the affidavits provided by Plaintiffs state that the affiant "knew" that the putative class has similar claims for overtime and spread of hours compensation based on their conversation with other employees. Further, the affidavits of Armando Guzman (at least a previous affidavit), Jose Garcia and Nelson

---

[7] It is noteworthy to mention at this point that clearly Plaintiffs have not acquired any significant response from employees to the collective action notices, as these affidavits are the same as those presented by the Plaintiffs in their motion to send notice to putative class members, which was decided in October 2007, over three (3) months ago. Plaintiffs provided affidavits from each of the two (2) named Plaintiffs, as well as two (2) individuals named Jhon Orellana and Nelson Rios. These affidavits are defective and should be disregarded by the Court. In this matter, each of the affiants in their affidavits state that, "I have had this Affidavit translated into Spanish, and I understand its content." See Declaration of Lloyd Ambinder, dated December 17, 2007, Exhibits A, B, C and D. In each affidavit, a sentence then follows, presumably in Spanish, which presumably reiterates that the affidavit had been translated into Spanish. Id. However, the problem is that Defendant is made to presume, without any basis, that the affidavits, as stated in English, were actually completely and properly translated into Spanish for Plaintiffs.

The federal courts are in accord that affidavits in a foreign language need to be docketed with an official translation. See, eg., United State of America v. Napoles, 2007 U.S. Dist. LEXIS 54159 at *2, 3 (S.D.Tx. July 25, 2007). Federal courts have struck foreign language documents that did not contain a certified English translation. See, eg., Rivas-Montano v. United States of America, 2006 U.S. Dist. LEXIS 31893 at *2, 3 (M.D.Fl. May 22, 2006); see also Trapaga v. Central States Joint Board Local 10, 2007 U.S. Dist. LEXIS 23438 at *22-25 (N.D.Il. March 30, 2007).

Also, pursuant to CPLR § 2101(b), "Where an affidavit or exhibit annexed to a paper served or filed is in a foreign language, it shall be accompanied by an English translation and an affidavit by the translator stating his qualifications and that the translation is accurate." However, in this matter, Plaintiffs have provided no evidence as to who was the translator of the affidavits. No name for any translator is provided, no information is provided as to the experience of the translator, and certainly Plaintiffs have not provided any affidavit from the translator stating that the affidavit was correctly translated from the Spanish. Not only are these omissions clearly in violation of CPLR § 2101(b), Plaintiffs' affidavits present another problem in that they make it unclear as to whether Plaintiffs were even aware that they were swearing to the truth of their affidavits in front of a notary public. For all Defendant knows, Plaintiffs could have said one thing to the translator in Spanish, while the translator authored something completely different in English!

Rios list names of specific employees who allegedly have the same claims for overtime and spread of hours claims as that of Plaintiffs (the affidavit of Jhon Orellana omits the names of any specific employees). However, none of the affidavits say when the conversation with these other workers occurred. (For example, if these conversations took place in 1998, it would be outside the statute of limitations of the instant action.)

The affiants in each of the affidavits provided by Plaintiffs do not state the basis of their knowledge that these other named or unnamed employees actually worked over forty (40) hours a week and were not paid overtime wages. Furthermore, most of the names of employees listed in the affidavits only contain the person's first name and thus are vague and unverifiable (the fact that Plaintiffs list someone as "Chicken Pollo" is nearly comical). At best, Plaintiffs have shown that the claims of the named Plaintiffs, Jhon Orellana and Nelson Rios are typical of each other. However, no proof has been proffered that these individual claims are typical of other Reliable Bakery employees. Therefore, Plaintiffs have failed to prove the typicality requirement.

### C.    Plaintiffs Cannot Meet The Prerequisites Of Rule 23(a) Because They Cannot Show That They Are Adequate Representatives Of The Putative Class

The requirement of adequacy of representation tends to merge with the commonality and typicality requirements. Amchem Prod. Inc. v. Windsor, 521 U.S. 591, 625, 626, n. 20 (1997) ("Class representative[s] must 'possess the same interest and suffer the same injury' as the class members."). For the reasons that follow, Plaintiffs are inadequate representatives of the putative class.

First, courts will refuse to approve the class representative that lacks credibility and integrity. See e.g. Hall v. Burger King Corp., 1992 - 2 Trade Cas. (CCH) ¶ 70,042,

14

at 69,149 (S.D. Fla. 1992) (Plaintiff's lack of credibility was "fatal" to their representative status.); Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998) (Plaintiff's inconsistent accounts "would create serious concerns as to his credibility at any trial" and make him an inadequate class representative.)  Here, Plaintiff Armando Guzman is not an appropriate class representative since he has engaged in acts of moral turpitude such as ripping an alarm off the ceiling and destroying a clock while he was employed at Reliable Bakery.

Furthermore, courts have held that plaintiffs who have terminated their relationships with the defendant have a conflict of interest with class members who are presently employed.  See N.L.R.B. v. St. Louis Comprehensive Neighborhood Health Center, Inc., 633 F.2d 1268 (8th Cir. 1980) (vacating prior holding that former employees challenging practices that occurred while they were employed could represent present employees whose claims flowed from same legal theory).  In this matter, none of the named Plaintiffs are presently employed by Defendants.  Since the putative class includes present employees, Plaintiffs, due to conflicts of interest, cannot be adequate representatives of the putative class: while present employees have an interest in not bankrupting the company, Plaintiffs and other former employers are not concerned with whether the company is bankrupted from this action or not.

### D.   Plaintiffs Also Cannot Show That This Action Meets The Superiority Test Of Rule 23(b)(3)

In order to be certified as a class action, Plaintiffs must also establish that their claims also qualify under Rule 23(b).  Here, the Court should dismiss and/or strike Plaintiffs' claims since they can show no set of facts under which this action qualifies for

class treatment under Rule 23(b). The only subsection applicable to Plaintiffs' claim is Rule 23(b)(3) which provides that a class action can be maintained if, among other things, "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (the "superiority test"). Plaintiffs cannot meet the superiority test for three reasons.

### 1.     Rule 23 Is Not Superior To The FLSA's Opt-In Provisions

Plaintiffs cannot show that a class action under Rule 23 is superior to an opt-in collective action under § 216(b) of the FLSA. "The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Gen. Tel. Co. v. Falcon, 457 U.S. 147,155 (1982). There is nothing about this case that mandates use of this exception. Furthermore, as discussed above, Plaintiffs cannot show that a class action under Rule 23 is superior to an opt-in collective action under § 216(b) of the FLSA. See Leuthold, 224 F.R.D. at 470 ("[m]aintaining the suit exclusively as a FLSA conditional class action is superior to certifying an additional state law class under Rule 23(b)(3)"). As one court has determined:

> the case founders on the requirement that the plaintiffs show that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In this case, once employees who receive notice have decided whether to opt into the FLSA class, we will have before the Court as plaintiffs all of the present and former employees who wish to pursue a claim for unpaid wages. Each of those persons then will be able to pursue on his or her own behalf state law claims, which cover the very same conduct as the FLSA claim. It is entirely possible -- particularly in light of the significant dispute over whether the alleged practices were illegal -- that only a few or a handful of employees will elect to opt into the FLSA action. Were that to occur, we would be left with the rather incongruous situation of an FLSA "class" including only a tiny number of employees who are interested in seeking back wages, with a state-law class that nonetheless includes all or nearly

16

> all of the companies' present or former employees. Because all of the companies' present and former employees will have the chance to decide whether to join the case, and because those who wish to do so will be before the Court, it makes no real sense to the Court to certify a class that will automatically include all of the employees unless they opt out. Under these circumstances, and because of the relatively modest number of existing present and former employees, the Court sees nothing to favor the proposition that we should impose on the collective FLSA claim an overlay of a Rule 23(b)(3) state-law class.

Muecke v. A -Reliable Auto Parts & Wreckers, Inc., 2002 U. S. Dist. LEXIS 11917, at *2 (N.D. Ill. June 25, 2002); see also Thiebes, 1999 U.S. Dist. LEXIS 18649, at *11-12 (certifying FLSA collective action but denying class certification of state law overtime claims in part because plaintiffs could not show "that a class action is the superior method for resolving the numerous state law claims (with varying elements) they have pled"); Crain v. Helmerich & Payne Int'l Drilling Co., No. 92-0043, 1992 U.S. Dist. LEXIS 5367, at *9 (E.D. La. April 17, 1992) (limiting Rule 23 certification of state law claim to those who have opted into the FLSA claim).

### 2. A Rule 23 Class Action Would Cause State Law Claims To Predominate Over the Federal Claims In An FLSA Collective Action

Another reason why a Rule 23 class action is not superior to an FLSA collective action is because the state law claims (the Rule 23 claims) would predominate over the federal claims (the FLSA claims). The U.S. Supreme Court, in United States v. Gibbs, 383 U.S. 715, 726, 16 L. Ed.2d 218, 86 S. Ct. 1130 (1966), first established the factors that federal courts should weigh in determining whether to exercise supplemental jurisdiction (whereby federal courts hear cases involving state-law claims). The courts must "consider and weigh in each case, at every stage of the litigation, the values of judicial economy, convenience, fairness and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 98 L. Ed.2d 720, 108 S. Ct. 614 (1988). Pursuant to 28 U.S.C. §

1367(c)(2), federal courts may decline to exercise supplemental jurisdiction over claims that "substantially predominate over the claim or claims over which the district court has original jurisdiction". In the Second Circuit, "Courts in this district have found that state law claims predominate when the federal law claims are merely peripheral or cover a much narrower issue than the state law claims, or where the factual or legal analysis of the claims are unrelated." Dunlop v. The City of New York, 2006 U.S. Dist. LEXIS 72315 at *17 (S.D.N.Y. October 3, 2006).

In a case similar to the instant action, a set of individual plaintiffs simultaneously sought certification of a collection action under 29 U.S.C. § 216(b) for their FLSA claims and Rule 23 class certification for their state law claims. See Jackson v. City of San Antonio, 220 F.R.D. 55 (W.D.T.X. 2003). The court remanded the state claims, holding that if the court tried both sets of claims together, the state claims would predominate over the federal claims, because the state claims would dramatically increase the amount of individuals included as plaintiffs:

> Plaintiffs estimate that the number of individuals included as plaintiffs will increase from 190 to over 2000 under the Rule 23 scheme. The heft of the claims before the Court, then, would dramatically favor the state law claim, assuming that not all of thousands of Rule 23 plaintiffs would opt-in to the FLSA claim. This reality would flaunt the Congressional intention that FLSA claims proceed as an opt-in scheme. The Court finds that this fact alone favors remand of the state claims.

Jackson, 220 F.R.D. at 60.

In Jackson, the court declined supplemental jurisdiction over the state claims because certifying the class action would increase the amount of people in the action from 190 to 2000, an increase of ten and a half percent (10.5%). In the instant matter, to date, only two (2) people have opted in to the collective action, and together with

18

Plaintiff Garcia, this brings the total amount of people who are interested in a collective action to three (3).  However, as alluded to earlier, should the Court grant Plaintiffs' motion for Rule 23 class certification, the total amount of people that would now be in this lawsuit would at the very minimum be the list of one hundred thirty-three (133) employees provided by Defendant (See Affidavit of Joseph Vitacco, Exhibit "B"), an increase of forty-four percent (44%).  This fact alone should favor remanding the state claims to state court[8], but additionally "[t]he courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991); H&R Block, Ltd. v. Hoursden, 186 F.R.D. 399, 401 (E.D. Tex. 1999)("This court is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation.");  see also Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10 (D.P.R. 2005) (same).

"Moreover, Plaintiffs may not rely upon Rule 23's opt-out class structure to cover both the FLSA claim and the state claim and proceed with both claims and one class. 'It is crystal clear that § [2]16(b) precludes pure Rule 23 class actions in FLSA suits.'" Jackson, 220 F.R.D. at 58 (citations omitted).  If Plaintiffs' instant motion for certification of a collective action and Rule 23 class certification is granted, then of the

---

[8] In the Second Circuit, courts first examine whether they may decline to exercise supplemental jurisdiction over claims that "substantially predominate over the claim or claims over which the district court has original jurisdiction" pursuant to 28 U.S.C. § 1367(c)(2).  Then, the courts use the tests outlined above in Gibbs and Carnegie-Mellon to determine whether by remanding the state claims the courts comport with the objective of "most sensibly accomodating" the values of judicial economy, convenience, fairness and comity.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446, 447 (2nd Cir. 1998).  While this is an extra step, in the instant matter the Court should still decline to exercise supplemental jurisdiction.  If the Court declines to hear the Rule 23 class actions, the plaintiffs in this action would likely remain at three (3) people, allowing for quicker and more efficient adjudication of this matter, satisying the elements of judicial economy and convenience.  It would also satisfy the elements of fairness and comity, as only those individuals who opted in should receive relief for federal FLSA claims in federal court.  This is as opposed to individuals with only state claims who never opted out of the Rule 23 class action, which should be heard in state court.

putative group of one hundred thirty-three (133) plaintiffs, one-hundred thirty (130) individuals will only have state claims, not FLSA claims, and will likely only be in this action because they did not choose to opt out of the Rule 23 class action, and not because they opted in to the Rule 23 collective action.

Furthermore, the statute of limitations for the state claims is six (6) years, while the statute of limitations on the federal claims is two (2) years (or three (3) years if a showing of willfulness on the part of the Defendants can be proven by Plaintiffs). Therefore, due to the fact that the statute of limitations for state claims is much longer than that for federal claims, a great many of the one hundred thirty-three (133) plaintiffs will be in this action in federal court solely due to state law claims. The Court should therefore decline to exercise supplemental jurisdiction over the Rule 23 state claims.

3.  **An Opt-Out Class Action Existing In The Same Case As An Opt-In Collective Action Would Be Confusing To The Litigants And The Jury, Thereby Rendering The Litigation Unmanageable**

An opt-out class action is also not superior in this matter since it would be too confusing to potential class members since an FLSA opt-in collective action already exists. Due process mandates that potential New York class members - who are lay people, not lawyers - need to be informed of the existence of their rights under both. Plaintiffs have already informed them about their right to opt-in to an FLSA case. Now Plaintiffs want to inform the class about their right to opt-out of a Rule 23 claim under the New York Labor Law. It would be inherently confusing and unfair to send two (2) notices where the exact same action (or inaction) by the class member would have diametrically opposite consequences.

An examination of the logistical permutations of Plaintiffs' dual certification device underscores these problems.  Since Plaintiffs moved for and obtained FLSA collective action certification under § 216(b) before they moved for Rule 23 certification of the state law overtime claims, potential class members received a notice asking them whether they wish to affirmatively opt-in to the FLSA claim, and informed them that if they do nothing, they will not be a part of the case.  Now, if a Rule 23 class is certified subsequently, class members would receive a second notice of rights containing the same caption on the first page and likely similar language and format throughout the notice, but this time asking whether they affirmatively opt out of the case, and informing them that if they do nothing, they will be a part of the case. It is likely that a significant number of class members would regard the second piece of mail to be duplicative of the first, and are apt to throw it out without reading it.  Plaintiffs may contend that an alternative manner in which to send notice of an FLSA collective action and state law class action might be to combine the two concepts into a single notice. This is no panacea. A notice asking someone to check boxes expressing consent to join the FLSA case and opt out of the state law case, when the reality is that checking no boxes or not returning the form at all will place a class member in the case, is also confusing.

These considerations demonstrate the inevitable conclusion that allowing a § 216(b) collective action to co-exist with a Rule 23 class action would lead to confusion - both for notice and trial purposes - among potential plaintiffs and jurors. See De La Fuente v. FPM Ipsen Heat Treating, 2002 U.S. Dist. LEXIS 24040, at *5-6 (N.D.Il. Dec. 16, 2002) ("a notice that both calls for a decision whether to opt-in to the collective action and also whether to opt-out of the class action ... seems an inherently difficult task

21

to [do] in a non-confusing manner"); <u>Mete v. New York State Office of Mental Retardation & Dev. Disabilities</u>, 1993 U.S. Dist. LEXIS 8625, at * 14 (N.D.N.Y. June 24, 1993) (recognizing "confusion among the potential class members regarding the difference between the 'opt-in' and 'opt-out' choice of the two rules").

In addition, maintaining a case with two sets of plaintiffs (one set of whom opted-in, and one set of whom declined to opt-out), would present case management problems of exponential proportions. For example, there may be employees who have only state and not federal claims, which could cause serious litigation over whether or not this Court had proper jurisdiction. See <u>Chase v. AIMCO Properties, L.P.</u>, 374 F. Supp. 2d 196, 202 (D.D.C. 2005) ("Allowing plaintiffs to proceed with a state-law class action here would ... inject unacceptable complexities into the management of the case"); <u>Hasken v. City of Louisville</u>, 213 F.R.D. 280, 283 (W.D. KY. 2003) ("[B]ecause of the opt-in nature of the FLSA collective action, and the optout nature of the Rule 23(b)(3) state-law class, two different and distinct sets of plaintiffs could exist, which would result in the claims being tried in more than one proceeding"). These considerations require dismissal of Plaintiffs' Rule 23 allegations in this case.

**4.    Certifying A State Law Class Action Thwarts Congress' Preference For Overtime Claims To Be Brought Through Collective Actions**

Certifying a Rule 23 class action of Plaintiffs' state law claims also would interfere with the objectives of the FLSA and methods selected by Congress for the enforcement of those objectives. Congress has determined that employees' claims that they were not properly paid overtime compensation should not follow the Fed. R. Civ. P. 23 opt-out model and instead should follow the procedure where an individual does not become involved in such a suit unless he or she affirmatively opts-in to the case. See <u>Moeck v.</u>

Gray Supply Corp., 2006 U.S. Dist. LEXIS 511, at * 11-12 (D.N.J. Jan. 6, 2006) (in dismissing plaintiff's dual certification theory of combining a Rule 23 opt-out state law class claim with a § 216(b) opt-in FLSA collective action, this Court held that "Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions"); see also De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 306 and 311 (3d Cir. 2003) ("The principal difference between FLSA class actions and Fed. R. Civ. P. 23 class actions is that prospective plaintiffs under the FLSA must consent to join the class.... [M]andating an opt in class or an opt-out class is a crucial policy decision. Congress has selected an opt-in class for FLSA actions").

Allowing Plaintiffs to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA "would undermine Congress's intent to limit these types of claims to collective actions." Moeck, 2006 U.S. Dist. LEXIS 511, at * 15-16; see also McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 577 (N.D. Ill. 2004) (plaintiff "cannot circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar in substance to the FLSA that lack the opt-in requirement"). As one court has explained:

> [T]his Court harbors serious reservations (really an understatement) as to conventional class action treatment in this instance. There are powerful policy considerations that led Congress to change the original version of the Fair Labor Standards Act by enacting the Portal to Portal Act of 1947 so as to require the opt-in procedure via individualized written consents by employees wishing to join such actions. That policy and underlying congressional intent would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.

Rodriguez v. The Texan, Inc., 2001 U.S. Dist. LEXIS 24652, at *2-3 (N.D. Ill. March 7, 2001).

## POINT III:   PLAINTIFF CANNOT MAINTAIN A CLASS ACTION UNDER NEW YORK LABOR LAWS

In this case, Plaintiffs look to recover on a class action basis under the wage and overtime provisions of N.Y. Lab. Law §§198(1) and/or 663(2).  However, Plaintiffs are statutorily barred from proceeding on a class action basis for their state claims.  New York Civil Practice Law and Rules § 901(b) states:

> Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.

The state claims Plaintiffs desire to pursue as a class action, N.Y. Lab. Law  §§ 198(1) and 663(2), contain a penalty provision for the recovery of liquidated damages and do not specifically authorize recovery in a class action.   In fact, Plaintiffs' Complaint specifically seeks liquidated damages.  (See Complaint ¶¶ 56, 66).  Falling squarely within § 901(b)'s prohibitive construction, Plaintiffs cannot proceed as a class action on their state labor law claims since they seek a statutory penalty which does not specifically authorize the use of a class action.  Federal and state courts have repeatedly barred class action status when the state statute runs afoul of §901(b). Leider v. Ralfe, 387 F. Supp. 2d 283 (S.D.N.Y. 2005) (N.Y. Gen. Bus. Law §§ 340 and 350); Legrand v. Educ. Mgmt. Corp., 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. 2004) (N.Y. Lab. Law § 198); Foster v. Food Emporium, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. 2000) (N.Y. Lab. Law § 198); Hauptman v. Helena Rubinstein, Inc., 452 N.Y.S.2d 989 (Sup. Co. N.Y. Co. 1981) (N.Y.

Lab. Law § 198); Center v. Frito-Lay, Inc., 74 A.D.2d 550, 425 N.Y.S 2d 115, aff'd, 52

N.Y. 2d 994, 438 N.Y. S. 2d 80, 419 N.E. 2d 1079 (1981) (N.Y. Lab. Law § 198).

Notwithstanding § 901(b)'s prohibitory effect on Plaintiffs' ability to proceed as a

class action on their state labor law claims, § 901(b) prevents any plaintiff with a timely

state law claim and untimely FLSA claim from appearing before the court in a collective

action.   The court in Legrand v. Educ. Mgmt. Corp., 2004 U.S. Dist. LEXIS 17696

(S.D.N.Y. 2004) citing Foster v. Food Emporium, 2000 U.S. Dist. LEXIS 6053

(S.D.N.Y. 2000) explained:

> It is well settled that there is no collective action analogous to FLSA §
> 216(b) under the wage and overtime provisions of the New York State
> Labor Law. See N.Y. Lab. Law § 198(1); Carter v. Frito-Lay, Inc., 74
> A.D.2d 550, 425 N.Y.S.2d 115, affd., 52 N.Y.2d 994, 438 N.Y.S.2d 80,
> 419 N.E.2d 1079 (1981). Further, the New York Civil Practice Law and
> Rules § 901(b) provides that a plaintiff may not seek class-wide relief that
> includes statutorily prescribed liquidated or punitive damages unless the
> statute in question explicitly authorizes its enforcement by class actions.
> There is therefore no basis for [this Court] to authorize notice to potential
> class members going back six years (which is the statute of limitations
> under the Labor Law). See N.Y. Lab. Law § 663(3) (McKinney 1997). No
> doubt persons who elect to opt-in with their Federal claims will be advised
> by counsel for the plaintiff collective that they are also free to assert
> claims under the State's Labor Law; indeed, plaintiffs' counsel would be
> derelict in her duty if she did not so advise them. If persons who have no
> Federal claim but a timely State law claim hear about this action from
> their friends and coworkers and wish to file their own individual Labor
> Law complaints in the New York State Supreme Court, they are free to do
> so. Those individuals would not be properly before this Court, however,
> because they have no federal claim and there would not be diversity
> jurisdiction over any State law claim they might assert (because the $
> 75,000 jurisdictional amount would not be reached). It would be improper
> to bring persons who have no Federal claim into this Court under the guise
> of a collective action so they can pursue State law claims that they can
> only bring on their own and not collectively.

Id. at *6. The court, in stating, "there is no reason to provide an opt-in notice to a plaintiff

whose claims could not be asserted in this Court" limited the opt-in notice to similarly

situated individuals who have been employed by defendants within the last three years. Id. at fn. 2, *7.

The practical impact of the Legrand and Foster rulings bears significantly on the case *sub judice*. Not only are Plaintiffs barred from proceeding on a class action basis for their state claims, but any putative plaintiff time-barred from asserting a claim under the FLSA cannot appear before this court to pursue any state claim he or she may have.

## POINT IV: THIS COURT SHOULD DISMISS PLAINTIFFS' CLASS ALLEGATIONS WITH PREJUDICE FOR THE ADDITIONAL REASON THAT THEY IRRECONCILABLY CONFLICT WITH FEDERAL LAW

This Court also should dismiss Plaintiffs' state law class allegations with prejudice because litigation of those claims through Rule 23 would contravene the principles of the Rules Enabling Act, 28 U.S.C. § 2072(b) ("REA"). Under the REA, federal rules of practice and procedure "shall not abridge, enlarge or modify any substantive right." Id. In this case, Plaintiffs' dual certification theory - the assertion of New York state law claims as an opt-out Rule 23 class action concurrently with an opt-in § 216(b) collective action - would abridge the substantive rights conferred by the FLSA.

Under the FLSA, each individual possesses the substantive right to litigate his or her own overtime claim as a party plaintiff. Further, an employer possesses the substantive right to be held liable for back overtime pay only to those employees who affirmatively opt-in to the § 216(b) collective action, and the substantive right to not be bound by a judgment that purports to adjudicate unpaid overtime claims of absent class members (through a Rule 23 certification device).

Indeed, the FLSA expressly provides: "No employee shall be a party plaintiff to any [FLSA] action unless he gives consent in writing to become a party and such consent

is filed in the court in which such action is brought." 29 U.S.C. § 216(b); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003) ("in an FLSA collective action, only potential plaintiffs who 'opt-in' can be 'bound by the judgment' or 'benefit from it'"); "Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." Moeck, 2006 U.S. Dist. LEXIS 511, at * 11-12.

Legislative history confirms this intention. In amending the FLSA in 1947 through the Portal-to-Portal Act, Congress adopted the opt-in model with the intention of eliminating opt-out class actions. Its title for the statutory provision was "Representative Actions Banned." Pub. L. 49, ch. 52 § 61 Stat. 84, 87 (1947). Congress explained that, without a ban on opt-out class actions, "the courts of the country would be burdened with excessive and needless litigation," and employers would be faced with "vast allegations of liability ... brought on behalf of employees who had no real involvement in, or knowledge, of the lawsuit." Portal-to-Portal Act of 1947 § 1(a)(7), codified at 29 U.S.C. § 251(a)(7); Arrington v. National Broad. Co., Inc., 531 F. Supp. 498, 501 (D.D.C. 1982).

Plaintiffs' dual certification theory contravenes these purposes. Enforcement of state law overtime claims through a Rule 23 opt-out class would interfere with the objectives of the FLSA and the methods selected by Congress to adjudicate those claims, and thus would abridge substantive rights. The Third Circuit has recognized that opt-out class litigation affects substantive rights:

> Generally, the distinction between opt-in and opt-out classes is crucial.
> Under most circumstances, the opt-out class will be greater in number,
> perhaps even exponentially greater... The aggregation of claims,
> particularly as class actions, profoundly affects the substantive rights of

> the parties to the litigation. Notably, aggregation affects the dynamics
> for discovery, trial, negotiation and settlement, and can bring hydraulic
> pressure to bear on defendants. The more aggregation, the greater the
> effect on the litigation.

De Asencio, 342 F.3d at 310.  Similarly, in Moeck, 2006 U.S. Dist. LEXIS 511, at * 11,

the Court held that a plaintiff's state law overtime claims were not suitable for class

action treatment because allowing plaintiff "to circumvent the opt-in requirement [of §

216(b)] and bring unnamed parties into federal court by calling upon state statutes similar

to the FLSA would undermine Congress's intent to limit these types of claims to

collective actions." Thus, because acceptance of Plaintiffs' proposed dual certification

device would abridge the parties' substantive rights under § 216(b), it would violate the

REA.

Further, the principles of res judicata and collateral estoppel also foreclose the

concurrent litigation of Rule 23 and § 216(b) actions.  As such, concurrent litigation

would potentially subvert  the statutory requirement that individuals affirmatively act to

adjudicate their rights. The adjudication of a Rule 23 class action for overtime wages

would resolve the claims of all class members who did not opt-out of a court-defined

class. See Eisen v. Carlisle & Iacquelin, 417 U.S. 156, 176 (1974) ("Rule [23] was

intended to insure that the judgment, whether favorable or not, would bind all class

members who did not request exclusion from the suit"); Fontana v. Elrod, 826 F.2d 729,

732 (7th Cir. 1987) ("[I]t is not necessary that each member of the class actually receive [

] notice [of the class action]. 'An absent class member will be bound by any judgment

that is entered if appropriate notice is given, even though that individual never actually

received notice.'") (quoting 713 C. Wright, A. Miller, & M. Kane, Federal Practice &

Procedure § 1789, at 253 (2d ed. 1986)). If the Rule 23 class claims were litigated

concurrently with a § 216(b) collective action, undoubtedly there would be individuals among those class members who did not affirmatively opt-in to the collective action. The overtime claims of those non-opt-in individuals nonetheless would be adjudicated with those of the other Rule 23 class members, though they would not have opted in as required by the FLSA.

Once adjudicated, those individuals' overtime claims would terminate, as they would have recovered overtime or been determined ineligible for overtime pay. They would then be barred under the principles of res judicata and collateral estoppel from seeking overtime in another action brought by them under the FLSA. See, e.g., Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 921-23 (9th Cir. 2003) (affirming dismissal of the FLSA claim of one of the eight employees because the employee had previously litigated a state law claim for overtime against her employer); Tran v. Le French Baker, Inc., 1995 U.S. Dist. LEXIS 8371, at *7 (N.D. Cal. June 14, 1995) (holding that plaintiff who was previously awarded overtime pay under state law through a state administrative proceeding was collaterally estopped from pursuing an FLSA claim, even though State Labor Commissioner "did not have jurisdiction to hear the FLSA claim" in those proceedings); see also Small v. Lorillard Tobacco Co., 252 A.D.2d 1, 11, 679 N.Y.S.2d 593, 601 (1st Dept. 1998) ("once a claim is brought to final conclusion, all other claims arising out of the same  transactions are barred, even if based on a different theory or seeking a different remedy"). Thus, they would be barred from pursuing overtime claims under § 216(b) despite the fact that they never affirmatively consented to have someone else litigate overtime claims on their behalf. See, e.g., Gonzalez v. City of New York, 396 F. Supp. 2d 411 (S.D.N.Y. 2005) (employment discrimination claims of police officers

barred by res judicata where officers were absent class members in prior class action involving same facts).

Plaintiffs' proposed dual certification theory creates an irreconcilable conflict with the parties' substantive rights under the FLSA. In this circumstance, the REA mandates that the Rule 23 opt-out procedure be dismissed and/or stricken with prejudice. See Fed. R. Civ. Pro. 23 Adv. Comm. Notes ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended"); Himmelman v. Continental Casualty Company, 2006 U.S. Dist. LEXIS 56187 (D.N.J. August 11, 2006) (granting defendant's motion to strike the Rule 23 class action allegations because they are legally incompatible with FLSA federal claim); Herring v. Hewitt Associates, Inc., 2006 U.S. Dist. LEXIS 56189 (D.N.J. August 11, 2006) (same); Pickett v. DeKalb County, 349 F.3d 1294, 1296 (11th Cir. 2003) ("Because of this opt-in requirement [under § 216(b)] . . ., FLSA plaintiffs may not certify a class under Rule 23.")

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Plaintiffs' motion be denied in its entirety and that Defendant's cross-motion be granted and that Defendant be awarded its costs and attorneys' fees incurred in connection with Plaintiffs' motion and Defendant's cross-motion.

Dated: Lake Success, NY
January 31, 2008                    MILMAN LABUDA LAW GROUP PLLC

/s/_____
Joseph M. Labuda
Attorneys for Defendant, VLM, Inc.
3000 Marcus Avenue, Suite 3W3
Lake Success, NY 11042
(516) 328-8899