UNITED STATES DISTRICT COURT          FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ARMANDO GUZMAN and JOSE
GARCIA, individually and on behalf of
all other persons similarly situated who
were employed by VLM, INC. d/b/a
RELIABLE BAKERY,

                    Plaintiffs,                            MEMORANDUM
                                                          AND ORDER
          -against-                                       07-CV-1126 (JG) (RER)

VLM, INC. d/b/a RELIABLE BAKERY,
and JOSEPH VITACCO,

                    Defendants.
-----------------------------------------------------x
A P P E A R A N C E S :

          BARNES, IACCARINO, VIRGINIA, AMBINDER & SHEPHERD PLLC
                    111 Broadway, Suite 1403
                    New York, NY 10006
          By:    Lloyd Ambinder
                    LaDonna Marie Lusher
                    Attorneys for Plaintiffs

          MILMAN LABUDA LAW GROUP
                    3000 Marcus Avenue, Suite 3W3
                    Lake Success, NY 11042
          By:    Joseph M. Labuda
                    Attorneys for Defendant VLM, Inc. d/b/a Reliable Bakery

          GARY JOHN DMOCH & ASSOCIATES
                    171-22 Northern Boulevard
                    Flushing, NY 11358
          By:    Gary J. Dmoch
                    Attorneys for Defendant Joseph Vitacco

JOHN GLEESON, United States District Judge:

          Plaintiffs Armando Guzman and Jose Garcia, former employees of

defendant VLM, Inc. ("VLM"), a bakery, bring this putative class action alleging that

VLM and its president, Joseph Vitacco, denied them and other bakery employees

overtime compensation in violation of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 193, 663. I previously authorized notice of a collective action under the FLSA's provisions for collective actions whereby similarly situated employees can opt into a pending lawsuit. The plaintiffs now move to clarify that this authorization of notice constitutes conditional certification of a class under the FLSA and also to certify a class under Federal Rule of Civil Procedure 23 to pursue their state law claims. The defendants cross-move to dismiss the class allegations. For the reasons stated below, the plaintiffs' motions are granted on the condition that they waive their claim to liquidated damages and the defendants' cross-motion is denied.

## BACKGROUND

Armando Guzman and Jose Garcia are both former employees of VLM, which does business as "Reliable Bakery," and sue their former employer alleging that they and other employees they spoke to regularly worked over 40 hours a week without receiving time-and-a-half pay and "spread of hours" compensation for hours worked above 10 in a single day. Guzman Aff., Aug. 14, 2007, ¶¶ 6-9, 11; Guzman Aff., Sept. 13, 2007, ¶¶ 4-5 (claiming to have discussed matter with 19 named employees); Garcia Aff., Dec. 11, 2007, ¶¶ 4-6 (claiming to have discussed matter with 24 named employees).[2] They claim that most of these employees performed tasks similar to those performed by the plaintiffs. Guzman Aff., Sept. 13, 2007, ¶ 5; Garcia Aff., Dec. 11, 2007, ¶ 5. Guzman also affirms that he asked Vitacco to be paid more money, and

---

[2] Guzman provides only two last names, identifying the rest by first names and nationalities, except for one identified only by a nickname and nationality and one identified only by a nickname. Guzman Aff., Sept. 13, 2007, ¶ 8. Similarly, Garcia identifies five by first and last name, providing first names and nationalities for all the rest except for the same two nicknamed individuals cited by Guzman. Garcia Aff. ¶ 8.

Vitacco replied that he "was paying the rest of the workers the same way" as Guzman and thus could not pay Guzman more without paying other workers more as well. Guzman Aff., Sept. 13, 2007, ¶ 6. In addition to their affidavits, Guzman and Garcia both submit pay stubs, none of which indicates an hourly rate of pay or the hours worked. Ambinder Decl., Dec. 17, 2007, Ex. A; Ambinder Decl., Dec. 17, 2007, Ex. B.

Additionally, three other putative class members, who are bakers, have submitted affidavits claiming that they were not paid overtime, and also that they worked with numerous other bakers. Rios Aff. ¶¶ 4, 5, 10; Orellana Aff. ¶¶ 4, 6, 10; Ali Aff. ¶¶ 3, 6, 8-10. Nelson Rios alleges that other bakery employees have told him they did not receive overtime payment, and that he has spoken to 20 named bakery employees regarding the matter, most of whom performed work similar to his. Rios Aff. ¶ 8.[3] Jhon Orellana affirms that he knows his coworkers were not paid overtime compensation from frequent discussions with them, but he does not provide any names. Orellana Aff. ¶ 10. Orellana also provides several pay stubs that do not show his hours worked or hourly rate. Ambinder Decl., Dec. 17, 2007, Ex. C. Guzman and Garcia also allege that the "vast majority" of bakery employees were from Pakistan, South America or Central America, and that they believe many might be fearful to bring this case on their own. Guzman Aff., Feb. 14, 2008, ¶ 20; *accord* Garcia Aff., Feb. 14, 2008, ¶ 16; *see also* Guzman Aff., Sept. 13, 2007, ¶ 5 (alleging significant majority of named individuals to be of Latin American national origin); Garcia Aff., Dec. 11, 2007, ¶ 12 (same); Rios Aff. ¶ 8 (same).

---

[3]     Rios identifies all but three by first name and nationality. Rios Aff. ¶ 8.

VLM and Vitacco both deny that they have failed to pay VLM employees overtime. They submit affidavits from 10 current employees of the bakery. These affiants are 10 out of 18 individuals who submitted earlier affidavits opposing the plaintiffs' motion to authorize notice for the FLSA opt-in collective action. The original affidavits were rather cursory; all of the affiants claim they were told when they began work that they would be paid minimum wage on an hourly basis with time and a half for overtime; that they "believe" they have been paid for all of the time they worked and are not owed any money; that they have "always been paid properly"; and that they have spoken with "dozens" of other employees who have also been paid fully. *See* Ambinder Decl., Dec. 17, 2007, Ex. E.

Each affidavit proffered by the defendant here sets forth the affiant's hourly rate, indicates that the affiant is paid time-and-a-half pay for hours worked over 40, and includes a chart of the hours worked and wages received during the course of the affiant's employment. Carrasco Aff. ¶¶ 3, 6; Cruz Aff. ¶¶ 3, 6; Jesus Martinez Aff. ¶¶ 3, 6; Lopez Aff. ¶¶ 3, 6; Julio Martinez Aff. ¶¶ 3, 6; Hernandez Aff. ¶¶ 3, 6; Vitale Aff. ¶¶ 3, 6; Baksh Aff. ¶¶ 3, 6; Husain Aff. ¶¶ 3, 6; Plastina Aff. ¶¶ 3, 6. In a noteworthy contrast to the earlier affidavits, only one of these charts sets forth a wage rate that reflects New York's minimum wage at the commencement of the affiant's employment. *See* Cruz Aff. ¶ 6.[4]

The charts of employee pay all feature a curious "incentive bonus" apparently intended to insulate the employee's pay from variation based on hours actually

---

[4] The other affidavits all reflect wages that start above New York's minimum wage. However, due to increases in New York's minimum wage during the period at issue, in two cases wages starting above minimum wage become minimum wage during the course of the affiant's employment. *See* Lopez Aff. ¶ 6; Plastina Aff. ¶ 6.

worked. The majority of weekly entries for each employee reflect incentive bonuses which bring the employee's weekly pay up to the same level (which tends to increase over the term of the employee's tenure). On some weeks, the employee receives more or less money than on neighboring weeks, though even in such cases the incentive bonus always smoothes the amount of weekly pay to a whole dollar amount, and usually one divisible by 10. Generally, however, the incentive bonuses decrease as the amount of hours worked in a week increases, so as to maintain the employee's pay at the same level. Each employee states, "[W]hen I was hired I was told that if I worked my entire schedule for the week, I would receive additional incentive pay that now guarantees me average earnings of [a dollar amount that is different for each employee] per day. This encouraged me to show up to work each day. . . . Sometimes, if I worked more time than my regular shift, I might receive additional monies above the incentive pay." Carrasco Aff. ¶¶ 4, 5; Cruz Aff. ¶¶ 4, 5; Jesus Martinez Aff. ¶¶ 4, 5; Lopez Aff. ¶¶ 4, 5; Julio Martinez Aff. ¶¶ 4, 5; Hernandez Aff. ¶¶ 4, 5; Vitale Aff. ¶¶ 4, 5; Baksh Aff. ¶¶ 4, 5; Husain Aff. ¶¶ 4, 5; Plastina Aff. ¶¶ 4, 5.

Each employee further states, "I sign for my weekly pay which indicates the hours I worked, my pay rate, and any incentive pay that I receive," and each includes a pay stub for the week ending January 27, 2008 and a signed page with a handwritten dollar figure bearing the legend "I agree that the above amount represents my weekly incentive bonus for the week ending 1/27/08." Carrasco Aff. ¶ 7 & Ex. A; Cruz Aff. ¶ 7 & Ex. A; Jesus Martinez Aff. ¶ 7 & Ex. A; Lopez Aff. ¶ 7 & Ex. A; Julio Martinez Aff. ¶ 7 & Ex. A; Hernandez Aff. ¶ 7 & Ex. A; Vitale Aff. ¶ 7 & Ex. A; Baksh Aff. ¶ 7 & Ex. A; Husain Aff. ¶ 7 & Ex. A; Plastina Aff. ¶ 7 & Ex. A.

The plaintiffs each deny ever having heard of an incentive bonus or ever having seen pay documents of the sort proffered by the defendants' affiants. Guzman Aff., Feb. 14, 2008, ¶¶ 13-14; Garcia Aff., Feb. 14, 2008, ¶¶ 11-12. Garcia also claims to have spoken to several of the defendants' affiants, who claimed contrary to their affidavits that they were paid on a daily basis and not paid for overtime. Garcia Aff, Feb. 14, 2008, ¶¶ 6, 9. The plaintiffs also allege that some of the individuals they recall working with, and even one individual who submitted an earlier affidavit for the defendants, are not reflected on the list of employees provided for notice purposes. Guzman Aff., Feb. 14, 2008, ¶ 8; Garcia Aff., Feb. 14, 2008, ¶ 6; *compare* Ambinder Aff., Dec. 17, 2007, Ex. E (affidavit of Naseb Choudhy Mohammad, initially proffered by the defendants) *with* Ambinder Aff., Feb. 8, 2008, Ex. E (list of names provided by defendants for notice purposes, excluding Mohammad).

An additional bakery employee, Marcelino Huerta, has recently opted in to the collective action and provided an affidavit. Huerta Aff., Feb. 24, 2008. Huerta's affidavit is substantially similar to the most recent affidavits provided by Guzman, Garcia, and Khan, in that he claims to have worked overtime without receiving overtime or spread-of-hours compensation, *id.* ¶¶ 4-5, 7, 8; he claims that he believes the other bakery employees were similarly denied overtime pay, *id.* ¶ 7; he denies having heard of or received an incentive bonus, *id.* ¶ 10; and he claims that the vast majority of the workers employed at the bakery were from Pakistan, South America or Central America and would be afraid to bring the case on their own, *id.* ¶ 9.

Huerta's affidavit does, however, contain several notable differences from those submitted by Guzman, Garcia, and Khan. First, Huerta acknowledges occasionally receiving approximately $30-$40 extra in cash on certain weeks, starting in

approximately February of 2007, for what his employer stated was overtime pay. *Id.* ¶ 5. Second, he claims that he heard from his coworkers that "other workers were fired for asking overtime payment." *Id.* ¶ 9. Third, he addresses an earlier affidavit, submitted by the defendants under his name in opposition to the motion to authorize notice to the class.[5] In the earlier affidavit, Huerta alleged that he believed that he was paid properly and not owed any money. Huerta Aff., Sept. 5, 2007. In his current affidavit, he states that he does not recognize the earlier affidavit or remember it being translated into Spanish, and that he remembers being asked by a supervisor to sign various documents he was informed were for company records, but that his signatures on those documents were not notarized. Huerta Aff., Feb. 24, 2008, ¶ 6. His signature in the earlier affidavit, which matches his later signature closely, was notarized. Huerta Aff., Sept. 5, 2007. The defendants have submitted an affidavit from a supervisor claiming that Huerta understood English and understood that he was being paid overtime. Coppolo ¶¶ 4-9.[6]

> The plaintiffs' proposed class is defined as follows:
>
> The plaintiffs and all current and former employees of VLM, INC. d/b/a/ RELIABLE BAKERY ("VLM") who worked as bakers, food handlers, storage handlers, landing dock employees and in other job functions related to defendants' bakery operation from March 16, 2001 through the present. Corporate officers, shareholders, directors and administrative employees shall not be part of the proposed class.

Ambinder Decl., Dec. 17, 2007, ¶ 1. This is the same group to whom I previously authorized notice.

---

[5]    This earlier affidavit was submitted under the name "Marcelina Huerta," but bears the signature "Marcelino," which closely matches the signature Huerta affixed to his recent affidavit for the plaintiffs. *See* Huerta Aff., Feb. 24, 2008; Huerta Aff., Sept. 5, 2007.

[6]    The affiant also believes that Huerta joined the action because he was recently suspended for drinking alcohol while working. *Id.* ¶¶ 10-11.

DISCUSSION

A.      *The Plaintiffs' Motion to Clarify That the FLSA Class is Conditionally Certified*

In a memorandum and order dated October 11, 2007, I authorized the plaintiffs to notify potential FLSA class members of the pendency of the action, allowing them to opt in to an FLSA collective action. *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2007 WL 2994278, *9 (E.D.N.Y. Oct. 11, 2007). The plaintiffs in their motion papers ask to conditionally certify the class as an FLSA collective action. Pl.'s Mem. 7-8. In their reply papers, the plaintiffs argue that the FLSA class is already conditionally certified as a collective action. Pl.'s Reply Mem. 3. I take this as a motion to clarify that my authorization to notify potential class members constituted a conditional certification of the class for the purposes of authorizing notice and discovery. For the reasons set forth in my memorandum and order of October 11, 2007, the motion is granted. *See Guzman*, 2007 WL 2994278, at *2 (noting that a class is typically conditionally certified at the notice stage of FLSA collective actions).

B.      *The Plaintiffs' Motion to Certify the State Law Class*

1.      *The Legal Standard for Class Certification*

Federal Rule of Civil Procedure 23(a) provides that one or more plaintiffs may proceed as a representative on behalf of all members of a class only if they can establish (1) "numerosity" of the class, *see* Fed. R. Civ. P. 23(a)(1) ("the class is so numerous that joinder of all parties is impracticable"); (2) the "commonality" of questions of law or fact, *see* Fed. R. Civ. P. 23(a)(2) ("there are questions of law or fact common to the class"); (3) the "typicality" of the named plaintiffs' claims or defenses, *see* Fed. R. Civ. P. 23(a)(3) ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) the "adequacy" of the named

8

plaintiffs as class representatives, *see* Fed. R. Civ. P. 23(b)(4) ("the representative parties will fairly and adequately protect the interests of the class"). *See Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999) (noting that the plaintiff bears the burden of proving these requisites), *overruled on other grounds by In re Initial Pub.Offering Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006). Rule 23 also contains an "implicit requirement" that the class be precise and ascertainable. *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006). If the plaintiff establishes these elements, Rule 23(b)(3) allows a class action to be "maintained" as long as the plaintiff establishes the "predominance" of common legal and factual questions over individual ones, *see* Fed. R. Civ. P. 23(b)(3) ("the questions of law or fact common to class members predominate over any questions affecting only individual members") and the "superiority" of a class action compared to other methods, *see id.* ("a class action is superior to other available methods for fairly and efficiently adjudicating the controversy").

I may certify a class only after I determine "that each of the Rule 23 requirements has been met," *IPO Sec. Litig.*, 471 F.3d at 41, which requires me to resolve all relevant factual disputes, even if they are identical with issues going to the merits of the case, *id.* In order to resolve these disputes, I must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Id.* However, in order to ensure that the class certification motion does not "become a pretext for partial trial on the merits," *id.*, I have "ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met," *id.* Any factual findings I make in deciding this motion are made only for that purpose and do not bind the trier of

fact. *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 &
n.13 (2d Cir. 2007) (quoting *IPO Sec. Litig.*, 471 F.3d at 41).

> 2. *Numerosity*

Rule 23(a)(1) prevents certification unless a class is "so numerous that
joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). However,
"[i]mpracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d
Cir. 1993). "A class comprised of more than forty members generally satisfies
numerosity." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995);
*see also Robidoux*, 987 F.2d at 935 (similar).

The plaintiffs claim that the class consists of up to 250 members based on
their affidavits and those of other employees. The defendants have provided 133 names
and addresses in authorizing notice to the members of the class. It is undisputed, and I
find, that the class as the plaintiffs define it -- individuals the defendants employed in
specified positions within the specified time period -- consists of at least 133 individuals,
and there no serious dispute that this class would easily satisfy the requirement of
numerosity.[7]

The defendants, however, claim that the class must be narrowed under
New York class action law to include only those four individuals who have opted into the
FLSA action. They rely for this proposition on *Alix v. Wal-Mart Stores, Inc.*, 838
N.Y.S.2d 885, 889 (Sup. Ct. 2007),[8] which found that a class composed of all hourly
employees of Wal-Mart and Sam's Club in New York included too few individuals with

---

[7]     I do not find relevant to this motion, and thus do not decide, whether the class so defined
consists of more than 133 individuals as the plaintiffs claim. *See IPO Sec. Litig*, 471 F.3d at 40 (specifying
"more than 200" as a hypothetical satisfactory finding as to the size of the class for numerosity purposes).
[8]     The defendants do not indicate what significance they wish me to attach to New York
courts' construction of New York's class action statute.

even a colorable claim for relief. Whatever the persuasive force this opinion may have as applied to Rule 23, it does not stand for the proposition that only those individuals who opt into an FLSA collective action are proper class members for a NYLL action based on the same conduct. That latter proposition has been rejected by several federal courts. *See, e.g.*, *Jankowski v. Castaldi*, No. 01-CV-164 (SJF)(KAM), 2006 WL 118973, *2 (E.D.N.Y. Jan. 13, 2006) (declining to limit NYLL class to the number of individuals who submitted FLSA opt-in forms for numerosity purposes due to the possibility of intimidation or retaliation by employers); *Noble v. 93 Univ. Pl. Corp.*, 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (similar in case where only three employees opted into FLSA claims). I reject it as well. The class as defined by the plaintiffs is proper,[9] and there is no real dispute that it satisfies the numerosity requirement.[10]

3.      *Commonality*

Rule 23's requirement of "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), can be satisfied by even a single question of law or fact that is common to all class member, if the common question is "'at the "core" of the cause of action alleged.'" *Velez v. Majik Cleaning Serv., Inc.*, No. 03-CV-8698 (SAS), 2005 WL 106895, at *2 (S.D.N.Y. 2005) (quoting *D'Alauro v. GC Sys. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996)). The defendants do not dispute that commonality is established here, and I determine that it is.

---

[9]      I note that the defendants do not challenge the ascertainability of the class as the plaintiffs have defined it.

[10]      As noted *infra*, the defendants also argue that the pendency of the FLSA action renders joinder of all of the class members practicable. I address that contention in Section B.6, *infra*.

4.    *Typicality*

Rule 23(a)(3) "'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (*per curiam*)).

The evidence put forth here overwhelmingly indicates that the plaintiffs' claims are typical of those of the class.  The plaintiffs' affidavits allege speaking to numerous fellow employees who made similar claims; Guzman Aff., Aug. 14, 2007, ¶¶ 6-9, 11; Guzman Aff., Sept. 13, 2007, ¶¶ 4-5; Garcia Aff., Dec. 11, 2007, ¶¶ 4-6; Rios Aff. ¶ 8; Orellana Aff. ¶ 10; Guzman alleges that Vitacco told him that he could not raise Guzman's salary because he was paying all of the other employees the same way and would have to give them a raise as well; Guzman Aff., Sept. 13, 2007, ¶ 6, and, tellingly, the defendants' *own affiants* each report receiving a fluctuating "incentive bonus" which serves only to guarantee them a certain daily income regardless of hours worked. Carrasco Aff. ¶¶ 4, 5; Cruz Aff. ¶¶ 4, 5; Jesus Martinez Aff. ¶¶ 4, 5; Lopez Aff. ¶¶ 4, 5; Julio Martinez Aff. ¶¶ 4, 5; Hernandez Aff. ¶¶ 4, 5; Vitale Aff. ¶¶ 4, 5; Baksh Aff. ¶¶ 4, 5; Husain Aff. ¶¶ 4, 5; Plastina Aff. ¶¶ 4, 5.

The defendants' claim that the plaintiffs' claims and defenses are not typical is unconvincing.  First, they claim that their affiants are potential class members with claims very different from those of the plaintiffs.  The defendants do not, however, explain the inconsistency between the affiants' recent submissions and their earlier

assertions that they were told they would receive minimum wage. More importantly, the affidavits listing the "incentive bonuses" *support* the plaintiffs' claims that other bakery employees were paid on a daily and not hourly basis.

Second, the defendants suggest that different employees would face different legal issues in establishing whether Vitacco was their "employer" within the meaning of the FLSA. *See* 29 U.S.C. § 203(d) (defining employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee"). To determine if an individual is an "employer" under that act, courts consider the "economic reality" by assessing such factors as whether the individual (1) was able to hire and fire employees; (2) controlled work schedules or employment conditions; (3) determined the rate and method of payment; and (4) maintained employment records. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir 1999); *see also Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71-72 (2d Cir. 2003) (noting that *Herman* factors are not exclusive). Guzman affirms that Vitacco acknowledged his ability to set pay rates for the entire bakery by saying that he could not change Guzman's wages without changing the wages of the other employees. Guzman Aff., Sept. 13, 2007, ¶ 6. Vitacco in his own affidavit acknowledges being President of VLM and demonstrates significant knowledge regarding its personnel practices. Vitacco Aff., Jan. 31, 2008, ¶¶ 3-8. As the defendants have not produced any evidence indicating that Vitacco did not serve as an employer with respect to any class member, I find that the plaintiffs have carried their burden of demonstrating that their claims are typical of the claims of the class members.

5.      *Adequacy*

Before a court can certify a class, the plaintiffs must establish that they can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish adequacy, a plaintiff must show that "'class counsel is qualified, experienced and generally able to conduct the litigation,'" and that "'there is no conflict of interest between the named plaintiffs and other members of the plaintiff's class.'" *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (quoting *Marisol A.*, 126 F.3d at 378); *see also Cordes*, 502 F.3d at 99 (similar).

The defendants do not challenge the qualifications or expertise of the plaintiff's counsel, and which I find fully satisfactory. The defendants object, however, to the plaintiffs themselves as representatives. First, they claim that the fact that the plaintiffs are no longer employed by the defendants raises a conflict of interest. I see no conflict in this circumstance. *See Ansoumana*, 201 F.R.D. at 87 ("Because this is a suit primarily for money damages stemming from past actions, it is not relevant that only one of the named Plaintiffs is still employed [by the defendant]."); *see also Iglesias-Mendoza v. LaBelle Farm, Inc.*, 239 F.R.D. 363, 372 (S.D.N.Y. 2007) (finding irrelevant the fact that a named plaintiff was fired for misconduct).

Second, the defendants claim that Guzman's alleged destruction of a bakery alarm and of a bakery clock, for which Guzman was terminated, indicates such moral turpitude that Guzman could not adequately represent a class. While the parties contest the facts of these incidents, I find it unnecessary to resolve these disputes. It is true that class representatives with credibility so poor as to materially impair the plaintiffs' case at trial may be inadequate for that reason. *See, e.g.*, *Savino v. Computer*

*Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (upholding a determination of inadequacy based on the finding that the plaintiff's "differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial"); *but see In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) ("Any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems could become the focus of cross-examination and unique defenses at trial, to the detriment of the class. Plaintiff's testimony or credibility that is subject to attack must be on an issue critical to one of their causes of action." (internal quotation marks and alterations omitted) (citing cases)). However, even if I found that Guzman had destroyed bakery property, this would constitute at best only modest evidence of bias if Guzman was called as a witness at trial, and would not materially impair his credibility. It would not in any way constitute a defense specific to Guzman or otherwise impair his representation of the class. *See Iglesias-Mendoza*, 239 F.R.D. at 372 (finding plaintiff's termination for misconduct irrelevant to whether he was an adequate representative for a class suing under FLSA and NYLL). Therefore, I find that the plaintiffs are adequate class representatives.

      6.    *Predominance*

For a class action to be maintained under Rule 23(b)(3), I must determine that "the questions of law or fact common to class members predominate over any questions affecting only individual members." In making this determination, I look to "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of

concentrating the litigation of the claims in a particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

If common questions of law or fact predominate regarding liability, the existence of individual questions as to damages is generally unimportant. *See, e.g.*, *Iglesias-Mendoza*, 239 F.R.D. at 372-73 ("[W]hen determining whether common issues predominate, courts focus on the liability issue." (internal quotation marks omitted)); *Noble*, 224 F.R.D. at 345-46 (noting possibility of bifurcating trials into liability and damage phases). Predominance is satisfied here, where the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees. *See Noble*, 224 F.R.D. at 345 (finding predominance of common questions when the action was based on "defendants' alleged policy of requiring employees to work overtime hours without adequate compensation).

7. *Superiority*

The final requirement under Rule 23(b)(3) is that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." The same factors relevant to my determination regarding predominance are relevant to my assessment of whether a class action is superior to other methods. Fed. R. Civ. P. 23(b)(3)(A)-(D). The defendants make several arguments to suggest that this superiority requirement is not satisfied here.

First, they suggest that it will not lead to judicial economy considering that the FLSA collective action already provides for easy participation in this litigation.[11] This is unpersuasive. The plaintiffs argue that many employees will be reluctant to

---

[11] The defendants style this as a challenge to numerosity, but considering the presumption that joinder is impracticable with a class of over 40, I think this challenge is properly directed at the superiority of a class action over alternative forms of litigation.

participate in the action due to fears of retaliation, and I have seen nothing in the record to convince me that this is not a valid concern. Seen in this light, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action. *See Noble*, 224 F.R.D. at 346 (finding superiority based in part on the possibility that employees would be dissuaded from pursuing individual claims by fear of reprisal); *cf. Ansoumana*, 201 F.R.D. at 85-86 (considering likelihood that low-wage immigrant employees would fear reprisal as affecting the likelihood that they would pursue claims independently of a class action). The FLSA's opt-in procedure is simply not an equivalent stand-in for a class action in this case.

The defendants' next argument is that it would be confusing to mail two sets of notices; one to allow the plaintiffs to opt in to the FLSA collective action and one to allow them to opt out of the class action. It is true that there would be some possibility of confusion, but this can be allayed through careful wording of the class notice. In any event, of course, the question is not whether a class action would be perfect but whether it would be superior to the alternative. I do not find that any confusion that the dual notices may cause to significantly undermine the superiority of a class action.

The defendants also note that allowing Rule 23 class certification would be likely to expand the litigation to include numerous state-law claims and only a handful of federal claims. This may appear particularly incongruous because a vast number of the state plaintiffs will have declined to pursue their federal claims but will nevertheless be members in a class seeking redress over essentially the same conduct. The defendants urge that the predominance of state law claims will justify declining to exercise supplemental jurisdiction, and suggest that maintaining a federal class action will thwart

Congress's policy in specifying the opt-in procedure for FLSA collective actions and in enacting the Rules Enabling Act, *see* 28 U.S.C. § 2072(b) (noting that rules promulgated pursuant to Rules Enabling Act may not abridge substantive rights).

28 U.S.C. § 1367 allows a federal court to exercise supplemental jurisdiction over claims within the same constitutional case or controversy as a claim over which it has original jurisdiction. It is clear that the NYLL claims, arising out of the same conduct as the FLSA claims, fall within the same constitutional case. However, § 1367 allows a court to decline to exercise supplemental jurisdiction if the state law claim "substantially predominates over the claim or claims over which the court has original jurisdiction." § 1367(c)(2). In determining whether to decline to exercise supplemental jurisdiction, "district courts should balance the values of judicial economy, convenience, fairness, and comity." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006).

Some courts have declined to exercise supplemental jurisdiction over state labor law claims where few plaintiffs had or were predicted to opt into an FLSA collective action. *See, e.g.*, *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D. Tex. 2003) (declining to exercise supplemental jurisdiction based on the size of the state law class compared to the few individuals who opted in under FLSA); *see also, e.g.*, *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 & n.18 (3d Cir. 2003) (finding district court abused discretion in exercising supplemental jurisdiction over state law claims that involved different proof than FLSA claims).

Here I find that the values of judicial economy, convenience, and fairness all favor exercising supplemental jurisdiction, and I do not find comity concerns to be

strongly implicated. The factual overlap between the federal claims and the state claims is virtually total; it would ill serve the interests of convenience or judicial economy to relitigate in state court the defendants' pay practices. To the extent that employees may feel intimidated about volunteering to participate in an action as suggested by the plaintiffs, fairness counsels in favor of exercising supplemental jurisdiction to hear their claims. And due to the straightforward nature of the legal questions under state law, no significant comity interest counsels in favor of allowing state courts to decide those claims.

I note that it is routine for courts in the Second Circuit to certify state labor law classes in FLSA actions. *See, e.g.*, *Ansoumana*, 201 F.R.D. at 90-91 (exercising supplemental jurisdiction over NYLL claims); *Toure v. Cent. Parking Sys.*, No. 05-CV-5237 (WHP), 2007 WL 2872455, at *9 (S.D.N.Y. Sep. 28, 2007) (certifying NYLL class in FLSA action without explicit discussion of the reason for exercising supplemental jurisdiction); *Jankowski*, 2006 WL 118973, at *9 (similar); *Noble*, 224 F.R.D. at 346 (similar); *but see Neary v. Metro. Prop. & Cas. Ins. Co.*, 472 F. Supp. 2d 247, 251-53 (D. Conn. 2007) (declining to exercise supplemental jurisdiction over state-law claims from *all fifty states*). Accordingly I exercise my supplemental jurisdiction over the NYLL claims.

I reject the defendants' arguments that the FLSA or the Rules Enabling Act in some way forbid maintaining this class action. It is true that some courts have found that FLSA's opt-in procedures are circumvented by certifying a Rule 23 class for state law claims regarding similar conduct. *See, e.g.*, *Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522, 523-24 (M.D. Pa. 2006) (holding that to allow FLSA and Rule 23

proceedings simultaneously would "essentially nullify Congress's intent in crafting Section 216(b) [FLSA's opt-in provision], and eviscerate the purpose of Section 216(b)'s opt-in requirement"); *Herring v. Hewitt Assoc., Inc.*, No. 06-267 (GEB), 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006) (finding Rule 23 and FLSA opt-in provision "inherently incompatible"). However, it is settled in the Second Circuit that FLSA does not preempt state wage and hour laws. *See Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991) (affirming rejection of the claim that FLSA preempted Connecticut overtime law). That being the case, there is no reason that FLSA's collective action procedure is incompatible with maintaining a state law class action over the same conduct. *See Westerfield v. Wash. Mut. Bank*, No. 07-CV-2817, 2007 WL 2162989, *1-*3 (E.D.N.Y. July 26, 2007) (rejecting argument that Rules Enabling Act prevented class actions from being brought in tandem with FLSA actions); *see also id.* at *3 ("There is no legal doctrine, of which the Court is aware, that permits the Court to dismiss a cause of action solely on the grounds that it is 'inherently incompatible' with another action before it. . . . [The cases which rely solely on] the theory of inherent incompatibility are simply wrongly decided under an imaginary legal doctrine."). Thus, while FLSA claims cannot themselves be brought through a class action, neither FLSA nor the Rules Enabling Act preempts the NYLL or its enforcement through a class action.[12]

---

[12]     I fail to grasp the significance of the defendants' claim that principles of *res judicata* could lead an absent Rule 23 class member's FLSA claim to be finally resolved even though the plaintiff fails to opt in to the FLSA collective action. The defendants, apparently in an abundance of concern for the rights of absent Rule 23 class members, are worried that someone who fails to opt out of the Rule 23 class action will have all claims that could have been brought in that action, including any FLSA claim, resolved by *res judicata* without opting in to the FLSA action. But principles of *res judicata* apply to any class action, whether it contains a simultaneous FLSA claim or not. If FLSA prevented a Rule 23 class action from being brought in a case where an FLSA claim was being brought simultaneously, it would also prevent Rule 23 class actions (or state opt-out actions) in cases where FLSA claims could have been made, even if they were not in fact made. I do not interpret 29 U.S.C. § 216(b) to sweep so broadly, nor does any decision of which I am aware.

Therefore, I find a class action superior to other available methods for fairly adjudicating the controversy.

C.     *The Defendants' Cross-Motion to Dismiss the Class Allegations*

In addition to reiterating their arguments against class certification, the defendants cross-move to dismiss the class allegations based on the unavailability of liquidated damages in class actions under New York law.  N.Y.C.P.L.R. 901(b).  I have already decided, however, that the plaintiffs can bring their state law claims as a class action if they waive their claims to liquidated damages.  *See Guzman*, 2007 WL 2994278, at *5.  The defendants have provided no reason to reconsider my decision.

CONCLUSION

For the reasons stated above, the plaintiffs' motions are granted on the condition that they waive their claims to liquidated damages, and the defendants' cross-motion is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: March 2, 2008
        Brooklyn, New York